UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US RIGHT TO KNOW,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH,<br><br>Defendant. | Civil Case No. 24-2785 (JEB) |

## JOINT STATUS REPORT

Pursuant to the Court's January 8, 2025, Minute Order, Defendant National Institutes of Health ("NIH") and Plaintiff US Right to Know ("USRTK") submit this joint status report in this Freedom of Information Act ("FOIA") case.

**Plaintiff's Statement**

1. Plaintiff filed its FOIA request with NIH on June 26, 2024. ECF No. 1, Exhibit A. That request sought the communications to or from Dr. Erik Stemmy about gain-of function Human Coronavirus research over a narrow temporal window between April 1, 2016, and September 1, 2026. Plaintiff's request also contained a request for a fee waiver.

2. NIH did not respond or even acknowledge Plaintiff's FOIA request. As a result, Plaintiff requested a determination from the NIH on August 5, 2024. When that request went unanswered, it filed its Complaint on October 1, 2024 (ECF No. 1) and effectuated service on October 16, 2024. ECF No. 8. (NIH does not deny that it ignored Plaintiff's request until this action was initiated.)

3. NIH then contested service because it alleged that the address, used by Plaintiff for service on NIH, 9000 Rockville Pike, Bethesda, MD 20892, was, though correct, not a proper address for service. Plaintiff then requested a second summons and served it. ECF Nos 4-5.

4. NIH then moved this Court for an enlargement of time to file its Answer which Plaintiff did not oppose. ECF Nos. 7-8.

5. On January 8, 2025, NIH filed its Answer. ECF No. 9.

6. On January 8, 2025, the undersigned counsel reached out to counsel for NIH and requested a meet and confer to ascertain NIH's position on a production schedule and issuance of a lawful determination. Counsel for Plaintiff received no substantive response by January 14, 2025, and repeated his request again on January 15, 2025. Finally, on the afternoon of January 17, a little over two business days prior to the original deadline set by this Court, NIH first provided Plaintiff with a one-sided draft Joint Status Report (JSR) that bore no resemblance to the ultimate JSR being filed in this action. NIH furthermore then refused to meaningfully cooperate in scheduling prospective times to confer further on subsequent drafts, thus necessitating Plaintiff's last-minute Motion for Enlargement. ECF 10.

7. Plaintiff expresses concern over the fact that, in a developing pattern of aggressive constructive denial, NIH has repeatedly ignored Plaintiff's FOIA request since it was filed on June 26, 2024, and continues to do so by way of its ongoing unwillingness to engage in meaningful and timely meet and confers with Plaintiff and its amorphous statement in the opening paragraph of its statement *infra,* which is neither compliant with its past due obligation under FOIA to issue a determination[1] nor this Court's Minute Order dated January 8, 2025.

---

[1] *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (explaining that an agency is obligated under FOIA to issue a timely

8. Plaintiff expresses further concern over NIH's proposed production schedule for at least three reasons. First, because of the NIH's failure to issue a timely determination, Plaintiff is in no position to ascertain how many records are responsive to its request and what rate of production would be required to avoid such records being produced after they are stale. Noting that production rates are frequently a function of the total number of responsive records.[2] Secondly, notwithstanding its inapt citations, NIH proposes a production rate that does not comport in any way with well-established precedent showing that 500 pages per month is the base rate in FOIA actions.[3] In support of this proposition NIH cites anomalous actions and/or actions that are procedurally more mature and where the agency has already shown due diligence in processing the FOIA request at issue. The procedural posture of this action renders these citations inapt. *See e.g.*, Min, Order, *Power the Future v. U.S. Dep't of Energy*, Civ. A. No. 24-1923 (TSC) (D.D.C. entered Dec. 12, 2024) (ordering that "Defendant should explain why it believes that processing 400 responsive records per month to Plaintiff's Freedom of Information Act (FOIA) request is

---

"determination" that not only identifies all documents it intends to produce but also the reasons for any withholdings).

[2] *See e.g. Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 248 (D.D.C. 2017) (ordering a production rate of 2850 pages per month over Defendant's proposal of 500 pages per month because the Defendant's production rate would result in unreasonable and protracted production and further stating that "no requestor should have to wait more than three years before the FBI provides a complete response to a request.").
.
[3] *See e.g., Rolling Stone LLC v. U.S. Dep't of Just.*, No. 23-CV-10741, 2024 WL 3862521, at *3 (S.D.N.Y. Aug. 19, 2024) (processing records at 500 pages per month is "a fairly standard" rate); *Daily Caller News Found. v. Fed. Bureau of Investigation*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) ("500 pages per month set forth in the FBI's policy and typically ordered by this Court"); *Negley v. U.S. Dep't of Justice*, 305 F. Supp. 3d 36, 46 (D.D.C. 2018) (500 pages per month appropriate); *Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 187 n.3 (D.D.C. 2018) ("in a number of recent cases in this District, a production rate of 500 pages per month has been approved.").

reasonable"). Here, NIH requests a sub-par production rate without having even communicated the number of responsive records, let alone issued a determination. NIH justifies this with completely unsupported statements that it is, essentially, busy. An agency must do more. It must show due diligence and exceptional circumstances by way of declarations and affidavits.[4] Third, NIH has been on notice of Plaintiff's narrow request since June 26, 2024, thus providing it with ample notice and time to have at least issued a determination, an obligation that it has, to date, flouted.[5]

9.    Plaintiff believes that henceforth monthly joint status reports are appropriate for at least two reasons. First, because of the general unresponsiveness of NIH; seven months after Plaintiff filed its FOIA request, NIH has yet to issue a determination or even any approximation thereof. Instead, it has offered excuses unsupported by either affidavit or declaration. Granting NIH's request for quarterly JSR reporting almost guarantees that Plaintiff will only learn of such basic information as total number of responsive pages nearly one year after filing its FOIA request.

---

[4] *See e.g., Buzzfeed Inc. v. U.S. Dep't of Justice*, 18-cv-2370 (CRC), at *10 (D.D.C. Apr. 13, 2022) ("Many courts in this district have held that administrative delay and FOIA backlog do not form a reasonable basis in law for withholding documents"); *Center for Public Integrity v. United States Dept. of St.*, Civil Action No. 05-2313 (JDB), at *4-5 (D.D.C. Apr. 24, 2006) ("The Department submits that the Peppe declaration demonstrates the existence of 'exceptional circumstances' and 'reasonable progress' in reducing the backlog of pending requests."); *Energy Future Coal. v. Office of Mgmt.*, 200 F. Supp. 3d 154, 160 (D.D.C. 2016) ("As explained in the Hardy Declaration, OMB staff perform multiple review of each document, so as to ensure that OMB has properly implemented the presumption of openness mandated by the President's FOIA Memorandum and the Attorney General's FOIA Guidelines.").

[5] An agency's failure to meet statutory deadline to make a determination "serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request." *Daily Caller v. U.S. Dept. of State*, 152 F. Supp. 3d 1, 10 (D.D.C. 2015). Once a suit has been filed, a court is empowered to "use its equitable powers to require the agency to process documents according to a court-imposed timeline." *Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014).

This is unacceptable under FOIA.[6]. Second, because the NIH has yet to provide Plaintiff with even the most rudimentary information (let alone a determination) necessary for the efficient and timely advancement of this action. Specifically, Plaintiffs have no inkling as to when a determination might issue, a determination that will then inform fundamental questions including the appropriate production rates (and related motions for stays or production schedules as and if needed), and the need for, and timing of, a *Vaughn* index. Notwithstanding, NIH's assertions to the contrary, NIH has also been generally uncooperative in this action. Plaintiff will not further burden this Court with further examples thereof but invites this Court to schedule a hearing should it wish to explore that further.

**NIH's Statement**

NIH reports that it completed its search for records in response to USRTK's FOIA request and that it is in the process of loading those records into its records review software so that a page count can be obtained. Once that process is completed, NIH will be able to provide exact count of potentially responsive pages for processing. NIH endeavors to provide a page count by the next joint status report.

NIH responds to Plaintiff's specific concerns. Plaintiff first states that it "is in no position to ascertain how many records are responsive to its request and what rate of production would be required to avoid such records being produced after they are stale." *Supra* ¶ 8. As mentioned above, NIH is in the process of loading those records into its records review software so that a page count can be obtained. NIH encountered technical issues with its review software that have delayed the process of obtaining a page count.

---

[6] *Payne Enterprises, Inc. v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("stale information is of little value yet more costly than fresh information ought to be.").

Plaintiff second states that it is concerned with NIH's proposed production rate. *Supra* ¶ 8. NIH responds that setting a review rate at this time is premature because it may be necessary for the parties to confer regarding narrowing the scope of Plaintiff's FOIA request. NIH is unable to determine the scope of processing until it has obtained a page count and conferred with Plaintiff on the scope of the request. If, however, the Court prefers to set a review rate, NIH proposes to process 300 pages per month and make monthly releases of responsive, non-exempt materials to USRTK until NIH completes processing the records. While NIH appreciates Plaintiff's frustration, NIH simply cannot process records at the rates Plaintiff proposes. Moreover, it would be unfair to other FOIA requesters who likewise are waiting for responses to their FOIA requests to give Plaintiff's request a preferential allocation of those limited resources simply because he elected to bring this lawsuit. *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615 (D.C. Cir. 1976) ("Congress intended to guarantee access to Government agency documents on an equal and fair basis"). For these considerations, this Court has previously permitted NIH to process 300 pages. Min. Order, *Tobias v. NIH*, Civ. A. No. 23-1267 (JEB) (D.D.C. entered Sep. 6, 2023). Other judges in this district have determined that 300 pages-per-month or less is reasonable. *See*, *e.g.*, Min. Order, *Bloomberg L.P. v. Food and Drug Admin.*, Civ. A. No. 23-0716 (TNM) (D.D.C. entered Aug. 23, 2023) (approving, over the plaintiff's objection, the agency's processing rate of 300 pages per month); Min. Order, *Project for Privacy & Surveillance Accountability, Inc. v. Office of the Dir. of Nat'l Intel.*, Civ. A. No. 21-1217 (TSC) (D.D.C. entered Apr. 19, 2022) (approving, over the plaintiff's objection, the agency's processing rate of 100 pages per month); Min. Order, *Project for Privacy & Surveillance Accountability, Inc. v. Office of the Dir. of Nat'l Intel.*, Civ. A. No. 21-1217 (TSC) (D.D.C. entered Apr. 19, 2022) (approving, over the plaintiff's objection, the agency's processing rate of 100 pages per month);

Min. Order, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, Civ. A. No. 19-3544 (AMP) (D.D.C. entered Feb. 1, 2022) (declining to increase the processing of 300 pages to 500 pages per month); Min. Order, *Ctr. for Reproductive Rights v. Dep't of State*, Civ. A. No. 18-2217 (DLF) (D.D.C. entered Apr. 3, 2019) (denying plaintiff's request for a 1,000 page per month processing rate; ordering a 300 page per month processing rate). NIH reiterates its position that it is still premature to set a production schedule.

Plaintiff finally requests monthly joint status reports, accusing NIH of "general unresponsiveness" and not providing "even the most rudimentary information." *Supra* ¶¶ 8-9. As discussed above, NIH is uploading the found records to ascertain the page count. More importantly, although NIH has not released any non-exempt records, the parties' counsel have exchanged dozens of e-mails since December 8, 2024, when NIH counsel first contacted Plaintiff's counsel. For example, the parties discussed and resolved Plaintiff's initial failure to perfect service of process, thereby avoiding motions practice on that issue. As further examples, the parties discussed exemptions and the need for a *Vaughn* index; NIH's position is that discussions on those points are premature until NIH has processed all records and knows what, if any, exemptions may be asserted. Nevertheless, Plaintiff continues to allege that NIH refused to cooperate (supra ¶ 6); that claim is not support by the evidence in the record. *See* Def.'s Notice (ECF No. 11) (attaching email chain detailing the numerous discussions in this case). In any event, NIH will continue to process Plaintiff's FOIA request timely in light of the current demands on its resources. Near the completion of NIH's processing of records, NIH will again confer with Plaintiff in a good faith attempt to resolve any of the parties' remaining differences without further burdening the Court. Given these developments and the parties' on-gong discussions, NIH does not believe a monthly status report is warranted as that would only unnecessarily burden the Court.

Because NIH is processing Plaintiff's FOIA request as quickly as possible, NIH respectfully requests that the Court permit the parties to file the next joint status report by April 22, 2025, and every ninety days thereafter.

*   *   *

Dated:  January 24, 2025                     Respectfully submitted,

| | |
|---|---|
| */s/ Nathaniel M. Lindzen* | EDWARD R. MARTIN, JR., D.C. BAR #481866 |
| NATHANIEL M. LINDZEN | United States Attorney |
| MA Bar No. 689999[7] | |
| Law Office of Nathaniel M. Lindzen | BRIAN P. HUDAK |
| 57 School Street | Chief, Civil Division |
| Wayland, MA 01778 | |
| Phone: (212) 810-7627 | By:  /s/ *Dimitar P. Georgiev* |
| Email: nlindzen@corpfraudlaw.com | DIMITAR P. GEORGIEV, D.C. Bar # 1735756 |
| | Assistant United States Attorney |
| *Counsel for Plaintiff* | 601 D Street, NW |
| *US Right to Know.* | Washington, DC 20530 |
| | (202) 815-8654 |
| | |
| | *Attorneys for the United States of America* |

---

[7] D.C. Federal Bar ID No. MA0053.